UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UESUGI FARMS, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | No. 15-CV-1724 |
| v. ) | |
| ) | Judge John W. Darrah |
| MICHAEL J. NAVILIO & SON, INC., ) | |
| d/b/a NAVILIO AND SON, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Uesugi Farms, Inc. and San Joaquin Tomato Growers, Inc. have brought this lawsuit for alleged violations of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e, *et seq.*, against Defendants. Third Party Quality Food Products, Inc. ("Quality") has moved to intervene as an Intervenor-Plaintiff in the action. Defendants have opposed Quality's Motion. For the reasons discussed below, Quality's Motion [53] is granted.

## BACKGROUND

On February 26, 2015, Plaintiffs, sellers and shippers of perishable agricultural commodities, filed their Complaint and a Motion for a Temporary Restraining Order ("TRO") against Defendants. Plaintiffs alleged that they had not been paid for produce that was shipped to Defendants and sought to preserve their beneficiary interests in trust assets created pursuant to PACA, 7 U.S.C. § 499e.[1] On February 27, 2015, the Court granted Plaintiffs' TRO.

On March 19, 2015, by Agreed Order, the Court granted motions to intervene filed by Anthony Marano Co. ("Marano") and Strube Celery & Vegetable Co. ("Strube"). The

---

[1] PACA provides for the establishment of a statutory trust in favor of unpaid suppliers of perishable agricultural commodities. *See* 7 U.S.C. § 499e(c)(1)–(2); *In re Ebro Foods, Inc.*, 449 B.R. 759, 762 (N.D. Ill. 2011).

March 19, 2015 Agreed Order further reflected that the parties were negotiating a settlement. On March 24, 2015, another third party, Bebo Distributing Co., Inc. ("Bebo"), filed a Motion to Intervene. On March 25, 2015, with the parties' agreement, the TRO was dissolved.

On March 27, 2015, Quality filed its Motion to Intervene as a Plaintiff. Quality alleges that it is a perfected PACA trust creditor of Defendants and has claims to the same PACA trust as the other Plaintiffs.

On April 16, 2015, two Agreed Orders were entered: one granted Bebo's Motion to Intervene, reflected that the parties had reached a settlement and dismissed Bebo's Intervening Complaint; the other reflected that the action was dismissed and that Marano and Strube had withdrawn their Motions to Intervene. However, at that time, Quality's Motion to Intervene was still pending, and, for this reason, the action was not closed.

## LEGAL STANDARD

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as a matter of right. Under this rule, a party must establish: (1) a timely motion; (2) an interest relating to the property or transaction that is the subject of the lawsuit; (3) potential impairment to its interest by the disposition of the lawsuit; and (4) lack of adequate representation of its interest by the existing parties. *Sokaogon Chippewa Comm. v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2003). "[A]t some fundamental level, the proposed intervenor must have a stake in the litigation." *Id.* at 946. Failure to meet any of these four factors requires the denial of the motion to intervene. *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995).

**ANALYSIS**

*Timeliness*

A district court holds the discretion on the issue of timeliness and considers the following factors: "(1) length of time the intervenor knew or should have known of his interest in the case; (2) prejudice caused to the original parties by the delay; (3) prejudice to the intervenor if the motion is denied; and (4) unusual circumstances." *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003). "The test for timeliness is essentially one of reasonableness: potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." *Reich*, 64 F.3d at 321 (internal citations and quotations omitted).

Here, Quality filed its Motion within a reasonable time of learning of the lawsuit. The Complaint was filed on February 26, 2015, and Quality filed its Motion roughly one month later. *See, e.g., In re Discovery Zone Sec. Litig.*, 181 F.R.D. 582, 594 (N.D. Ill. 1998) (finding one month to be a reasonable time); *Reich*, 64 F.3d at 321 (finding motion to intervene filed thirty-three days after party learned of interest in case timely); *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989) (finding six weeks timely). Although Defendants argue that Quality knew of its claims for months after the first missed payment, the analysis focuses on when Quality acted diligently in pursuing its interest in this lawsuit. Clearly, Quality acted diligently in filing its Motion within a short time of learning of the lawsuit.

This short amount of time also weighs against a finding of prejudice to the original parties. Although Defendants argue that they will be prejudiced because they have entered into settlement agreements with the other Plaintiffs, this prejudice is not based on Quality's delay in the case.

Defendants cite to the cases *Sokaogon*, 214 F.3d at 948, and *City of Bloomington v. Westinghouse Electric Corp.*, 824 F.2d 531, 535 (7th Cir. 1987) in support of their argument that motions to intervene may prejudice the other parties where they have entered into settlement agreements. However, Defendants ignore that, in both those cases, the settlement negotiations involved much longer time periods than this case. In *Sokaogon*, 214 F.3d at 950, settlement negotiations had been going on for six months. The settlement process in *City of Bloomington,* 824 F.2d at 535, spanned twenty months. Furthermore, there is no reason to think that Quality waited to intervene in order to disrupt settlement agreements in this case. *Cf. Sokaogon*, 214 F.3d at 948 ("[That intervenor] waited until settlement was imminent strongly suggests that [intervenor] was not interested in intervening in the litigation but in blocking a settlement between the parties – or, at a minimum, this settlement.").

Furthermore, Quality will suffer prejudice if its Motion is denied and the PACA trust assets are dissipated. Also, Quality would be required to file a separate lawsuit, which would be duplicative of the current lawsuit. *See Larson v. JPMorgan Chase & Co.*, 530 F.3d 578, 583 (7th Cir. 2008) (finding motion to intervene timely because it not make sense to bring an independent lawsuit and "clog[] up the courts with another suit they don't need"). The Court finds that Quality's Motion is timely.

*Interest Relating to the Subject Matter of the Action and Potential Impairment*

The next factor is whether Quality has asserted an interest related to the main subject matter of the action. An intervenor's interest must be a "direct, significant legally protectable one." *Reich*, 64 F.3d at 322. "The clearest example of such an interest . . . is where the would-be intervenor has a legal claim that could be made the basis of an independent suit against the defendant in the action in which he seeks to intervene." *Solid Waste Agency of N. Cook Cnty. v.*

*U.S. Army Corps of Eng'rs*, 101 F.3d 503, 506 (7th Cir. 1996). "While a mere economic interest may be insufficient to support the right to intervene, an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund." *Mountain Top Condo Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995).

Quality argues that it has the same claims against Defendants as the other Plaintiffs and has an interest in a *pro rata* share of the PACA trust assets. Specifically, Quality claims that Defendants owe it $43,458.50, plus interest, for produce sold to them. (Mot. Ex. 2 ¶ 9.) Quality further alleges that it has preserved its trust benefits by fulfilling PACA notice requirements. Quality has sufficiently established it has an interest in this litigation. *See e.g., In re Milton Poulos, Inc.*, 947 F.2d 1351 (9th Cir. 1991); *J.R. Brooks & Son, Inc. v. Norman's Country Mkt., Inc.*, 98 B.R. 47, 51 (Bankr. N.D. Fla. 1989) ("Where the trust assets are not sufficient to pay all PACA claims, the trust assets should be distributed on a *pro rata* basis to all beneficiaries who have protected their rights to the trust benefits"); *Matter of United Fruit & Produce Co., Inc.*, 119 B.R. 10, 12 (Bankr. D. Conn. 1990) ("To date, all courts which have addressed the question of claimed priority between PACA beneficiaries have ruled that a *pro rata* distribution is required to trust beneficiaries when there are insufficient trust assets to meet the trust obligations."); *In re Kornblum & Co., Inc.*, 81 F.3d 280, 286 (2d Cir. 1996) ("a single PACA trust exists for the benefit of all of the sellers to a Produce Debtor").

Likewise, Quality has established that its interest may be impaired. As a qualified trust beneficiary, Quality is entitled to share in the PACA trust assets, and its potential recovery may be adversely impacted if the funds are dissipated without its participation. "In some limited situations, the fact that the first action might deplete specific, identifiable funds before the court

so as to make it unlikely that the proposed intervenor could be fully compensated has been considered sufficient impairment of interest to meet the Rule 24(a)(2) standard." *Zurich Capital Markets Inc. v. Coglianese*, 236 F.R.D. 379, 386 (N.D. Ill. 2006) (quoting *Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 569-70 (D. Del. 1981) ("[T]hese cases are limited to situations where a discrete, distinguishable fund exists and where the intervenor has some presently, legally enforceable interest in that fund.")). Quality has satisfied this factor as well.

*Lack of Adequate Representation*

The last factor to consider is whether any existing party to the litigation adequately represents Quality's interests. "[T]he Supreme Court in articulating the standard under this . . . . element of Rule 24(a)(2) has stated that this 'requirement of the Rule is satisfied if the applicant shows that representation of his interest may be inadequate; and the burden of making that showing should be treated as minimal.'" *Lake Investors Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1261 (7th Cir. 1983) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (internal quotations omitted)).

Here, the other Plaintiffs have entered into settlement agreements with Defendants and have no motivation to represent Quality's share in the settlement or PACA trust assets. Indeed, the other Plaintiffs' interests are potentially adverse to Quality, as they are competing for the same funds. Quality has demonstrated that no party in the litigation adequately represents their interests and has satisfied this factor as well.

Consequently, Quality has established that it should be permitted to intervene as a matter of right.

## CONCLUSION

For the reasons stated above, Quality's Motion to Intervene [53] is granted.

Date: June 25, 2015

*[signature]*

JOHN W. DARRAH
United States District Court Judge

7